IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIAN K. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-504-NJR-DGW |
| | ) | |
| ZELDA BELL and USA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants on September 18, 2015 (Doc. 32) be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff, an inmate currently housed at the United States Penitentiary Leavenworth, Kansas, filed a Complaint on May 4, 2015 (Doc. 1) regarding events that occurred at the Federal Correctional Institution Greenville, Illinois ("FCI Greenville") in 2012.  Plaintiff is allegedly disabled and requires the use of a wheelchair.  He claims that in the Summer of 2012, he was housed in Unit 1-A, which is not handicap accessible, and that his counselor, Zelda Bell, refused to transfer him to Unit 1-B, which is handicap accessible.  On July 7, 2012, Plaintiff states that

while using a non-handicap accessible shower, he slipped and fell, fracturing his arm – he required surgery to repair the break.  Defendant Bell, however, reported that Plaintiff injured his arm in a fight and he was placed in isolation for several weeks where he did not receive adequate pain medication.  The surgery to repair his arm also was delayed by 13 days and additional follow-up care, scheduled through the next summer, was delayed.  Plaintiff finally claims that Defendant thwarted his efforts to file grievances and transferred him to a California prison, away from his family, in order to retaliate.

Plaintiff has been permitted to proceed on two deliberate indifference claims with respect to housing and failure to protect from the risk of falling (Counts 1 and 2), an equal protection claim for discriminating against Plaintiff in his cell placement on account of his race (Count 3), a retaliation claim related to his transfer (Count 4), a negligence claim related to housing (Count 6), and a medical malpractice claim (Count 7).  Defendants have filed a Motion for Summary Judgment, with the required Rule 56 notice, arguing that Plaintiff failed to exhaust his administrative remedies (Doc. 32).  Plaintiff filed a response on October 5, 2015 (Doc. 38)[1] to which Defendants replied (Doc. 39).  A hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on November 17, 2015.  Plaintiff appeared by video-conference and Defendant Bell and her supervisor, Rosalind Robinson, appeared and gave testimony.

### FINDINGS OF FACT

Plaintiff was housed at FCI Greenville from January 24, 2008 to December 27, 2012 (Doc. 32-1, p. 2, ¶ 3).  Defendant Zelda Bell was assigned to the H1-A housing unit in April, 2012 and was Plaintiff's correctional counselor until his transfer.  After USP Greenville, Plaintiff

---

[1] In an affidavit attached to the response, Plaintiff states that he is "cognitively impaired and under heave psychotropic medication" (Doc. 38-1, p. 5).  In both his submissions to the Court, and at the hearing, he appears fully capable of litigating this matter, presenting his arguments, and otherwise paying attention to what is required in order to prosecute his case.

was transferred to FCI Victorville, then to FCI Inglewood, and then to USP Leavenworth, where he currently resides.

Plaintiff filed numerous grievances and appeals throughout his stay at FCI Greenville – he filed at least 43 grievances/appeals and exhausted 1 (Doc. 32-5, pp. 19-40).  While Defendant Bell was his counselor, she gave Plaintiff 8 grievance forms after August, 2012 (Doc. 32-8, pp. 1-2).  It is undisputed that Plaintiff did not submit any grievance related to the claims in his Complaint.

Defendant Bell testified that she gives inmates the form BP-8, which is the first form to be completed in the grievance process, upon request.  She further testified that she gave Plaintiff the form whenever he requested one.  Inmates can acquire the form from their own correctional counselor or any correctional counselor they encounter, including their supervisors like Ms. Robinson.  Such forms are widely available.  Plaintiff did not request a grievance form in order to seek a cell unit transfer, request additional/correct medical care, to protest his transfer, or otherwise complain about Defendant Bell's conduct towards him during the relevant time period.  And, while Plaintiff contends that she didn't give him a BP-8 to grieve these issues because he had outstanding grievances, Defendant Bell does not recall making such a statement to Plaintiff.  This Court finds that Plaintiff did not ask for a grievance form in order to complain about the incidents in his Complaint; moreover, such forms were widely available to Plaintiff, even if his counselor had refused to give him the form.

This Court finds that Plaintiff is thoroughly familiar with the grievance process and how to request and submit grievances.  There is no showing that he requested any grievance forms (regarding the claims in the Complaint) either while at FCI Greenville or when he was transferred to FCI Victorville.  Plaintiff is not credible in his testimony that Defendant Bell

denied him a grievance from on July 2, 2012 because: he had acquired many forms before and after this date; he did not subsequently grieve the issues in this Complaint in grievances filed in August, September, October, November, and December of 2012 while at FCI Greenville; and, he did not file any grievance after his transfer in December, 2012 related to the claims in his Complaint.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. *See* 28 C.F.R. §542.10 et seq. Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies. First, he

must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (Form BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director by submitting a Form BP-10. 28 C.F.R. § 542.15.  And fourth, if the inmate is unsatisfied with the Regional Director's response, he may appeal that decision to the General Counsel (Form BP-11). *Id.* While this four-step process is the normal route an inmate must utilize to exhaust his administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14. Instead, he can mark the request "Sensitive," explain why he did not submit his request to the prison, and send it directly to the appropriate Regional Director. *Id.*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however,

when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

It is undisputed that Plaintiff did not file a grievance related to the events in the Complaint.  Plaintiff argues, essentially, that the grievance process was rendered unavailable because, on July 2, 2012, Defendant Bell refused to give him a grievance.  Plaintiff further argued that the issues with Defendant Bell began on June 25, 2012, that he shattered his arm on July 7, 2012 and that he simply did not have enough time to grieve the issues.  This line of argument is not convincing.

Plaintiff claims that he was moved to the undesirable housing location on June 25, 2012 – at that time he was aware that there was a problem.  He states that he requested a grievance on July 2, 2012 – after he tried to informally resolve the issue -- but was not given one.    He was not then able to file a grievance because he injured his arm on July 7, 2012.  While the Court finds that Plaintiff did not request a grievance on July 2, 2012, the evidence at the hearing revealed that grievance forms were widely available to Plaintiff, both in his Unit and the Special Housing Unit (which Plaintiff terms isolation) where he was housed after his injury.  Plaintiff could have filed a grievance about his housing by the July 15, 2012 deadline.  Plaintiff also could have filed a grievance related to his medical care at any point after July 7, 2012.  Plaintiff also could have asked that any delay in filing a grievance should be excused due to injury.  28 C.F.R. § 542.14(b).  Plaintiff elected not to do so.

Moreover, even  if Defendant Bell refused to provide a form on July 2, 2015, Plaintiff makes no showing that he requested a BP-8 after he fell in the shower, after he received medical care, or after he was transferred – all relevant dates to the claims in the Complaint.  Finally, even though Plaintiff is familiar with the grievance process there is no showing that he attempted to

bypass Defendant Bell by filing a "sensitive" grievance directly with the Regional Director. More importantly, there is no showing that Plaintiff filed a grievance regarding any of these events after he was transferred from FCI Greenville. Plaintiff cannot rely on the unavailability of administrative remedies when he voluntarily did not elect to avail himself of those remedies.[2]

### RECOMMENDATIONS

For the foregoing reasons, it is RECOMMENDED that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants on September 18, 2015 (Doc. 32) be **GRANTED**, that this matter be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: December 4, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

---

[2] Plaintiff directed the Court to two cases in support of his claims, *Fletcher v. Menard Correctional Center*, 623 F.3d 1171 (7th Cir. 2010) and *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). *Bryant* is unhelpful to Plaintiff. *Fletcher* involved a type of emergency grievance process created by the State of Illinois to tackle imminent harm. While the Court indicated that a grievance process can be rendered unavailable if an inmate would be subject to imminent harm, there is no showing in this case that Plaintiff was in imminent harm such that he may be excused from filing a grievance.