IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIAN K. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-504-NJR-DGW |
| | ) | |
| ZELDA BELL and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 48), recommending that the motion for summary judgment on the issue of exhaustion filed by Defendants Zelda Bell and the United States of America (Doc. 32) be granted. The Report and Recommendation was entered on December 4, 2015, and Plaintiff Brian Ellis filed a timely objection (Doc. 50), to which Defendants responded (Doc. 51).

Because timely objections were filed, the undersigned must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate

judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788.

## BACKGROUND

Plaintiff Brian Ellis is a federal inmate in the custody of the Bureau of Prisons ("BOP") at USP Leavenworth. He filed this action on May 4, 2015, asserting various constitutional claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and negligence claims under the Federal Tort Claims Act ("FTCA"), for incidents that occurred while he was housed at FCI Greenville (Doc. 12). In particular, Plaintiff alleges that, on June 25, 2012, he was assigned a wheelchair due to his medical conditions. His housing unit, however, was not wheelchair accessible. Plaintiff alleges that he asked his counselor, Zelda Bell, to reassign him to an accessible unit, but Bell refused to do so. Plaintiff further alleges that while using the non-accessible shower on July 7, 2012, he fell and fractured his arm, which required surgery to repair. Plaintiff believes his surgery was unnecessarily delayed by prison officials. He also believes that follow-up care after surgery was unnecessarily delayed. Following these incidents, Plaintiff claims that he tried to submit grievances through the administrate remedy process. He alleges that Ms. Bell frustrated these efforts by denying him forms, refusing to respond to his grievances, and losing or destroying documents. Finally, Plaintiff alleges that in order to retaliate against him for pursuing his legal claim, Ms. Bell transferred him to a prison in California, hundreds of miles away from his family.

The Court conducted a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. 1915A, and he was permitted to proceed against Zelda Bell on two claims of deliberate indifference, an equal protection claim, and a retaliation claim (Doc. 12). He also was permitted to proceed against the United States on a negligence claim and a medical malpractice claim under the FTCA (Doc. 12).

On September 18, 2015, Defendants filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 32). Plaintiff filed a timely response (Doc. 38), to which Defendants filed a reply (Doc. 39). In accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on the issue of exhaustion on November 18, 2015 (Doc. 46). Following the hearing, Magistrate Judge Wilkerson issued the Report and Recommendation currently before the Court (Doc. 48).

## THE REPORT AND RECOMMENDATION

The BOP has a four-tier administrative remedy process, which includes a request for informal resolution (BP-8 form), a formal request to the warden for resolution (BP-9 form), an appeal to the BOP Regional Director (BP-10 form), and an appeal to the BOP Central Office (BP-11 form) (Docs. 32-2, 32-4). Magistrate Judge Wilkerson found that inmates at FCI Greenville can acquire the BP-8 form from their own correctional counselor or any correctional counselor they encounter, including a supervisor; they "are widely available" (Doc. 48, p. 3). Magistrate Judge Wilkerson also found that Plaintiff was "thoroughly familiar" with the administrative remedy process (Doc. 48, p.

3). For example, Plaintiff was housed at FCI Greenville for approximately five years, and during that time, he filed forty-three administrative remedy requests (Doc. 48, p. 3).

It is undisputed that Plaintiff did not file a grievance related to the events in the complaint. Plaintiff claims he did not do so because the administrative remedy process was unavailable. Specifically, he testified that he asked Ms. Bell for a BP-8 form on July 2, 2012, which was after he received the wheelchair but before he broke his arm, but Bell refused to provide him with one. He claims he was told he could not have another BP-8 form because he already had some outstanding grievances that required a response. Plaintiff further testified that he simply did not have time to exhaust his remedies before he injured his arm on July 7, 2012.

Magistrate Judge Wilkerson concluded that Plaintiff was not credible in his testimony that Ms. Bell denied him a BP-8 form on July 2nd, because he acquired many of the forms before and after that date (Doc. 48, pp. 3–4). In fact, Ms. Bell's personal log book reflects that she gave Plaintiff eight BP-8 forms in the months following his surgery (Doc. 32-8). And the BOP's records show that he filed several formal grievances during that same time frame (Doc. 32-5, pp. 37–40). None of the records shows, however, that he requested BP-8 forms or filed a grievance related to a cell unit transfer, additional or proper medical care, to otherwise complain about Ms. Bell's conduct towards him, or to protest his transfer.

Magistrate Judge Wilkerson further concluded that even if Ms. Bell had denied Plaintiff a BP-8 form, this form was widely available both in his housing unit and the Special Housing Unit where he was housed after his injury (Doc. 48, pp. 3, 7).

Magistrate Judge Wilkerson also noted that Plaintiff could have bypassed Ms. Bell by filing a "sensitive" grievance, which is used when the inmate believes his safety or well-being is in danger, directly with the Regional Director, or he could have asked to excuse any delay in filing a grievance due to injury (Doc. 48, pp. 7, 8). Plaintiff didn't do either.

Magistrate Judge Wilkerson concluded that the grievance process was available to Plaintiff during the time period at issue, but he simply chose not to avail himself of that process with respect to the events at issue in this lawsuit (*see* Doc. 38, pp. 7, 8). Magistrate Judge Wilkerson further concluded that Plaintiff was not excused from filing a grievance based on imminent harm (Doc. 38, p. 8, n.1).

<u>PLAINTIFF'S OBJECTIONS</u>

Plaintiff filed two objections to the Report and Recommendation. First, he objected to Magistrate Judge Wilkerson's conclusion that he was not excused from the exhaustion requirement due to imminent danger (Doc. 50). He also objected to Magistrate Judge Wilkerson's decision not to recruit counsel for him (Doc. 50).

**A. Imminent Danger**

Prisoners are not required to exhaust their administrative remedies before filing suit if the administrative remedies are not available. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). One instance where administrative remedies are unavailable is when a prisoner is in imminent danger of serious physical injury, but the administrative remedies offer no possible relief in time to prevent the imminent danger from becoming an actual harm. *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010). In other words, "[t]he purpose of a prisoner's filing a grievance is to obtain a change of some sort," but when the prison

cannot "provide *any* relief or take *any* action whatsoever" in response to a grievance, there is no requirement to exhaust. *White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) (citing *Booth v. Churner,* 532 U.S. 731, 736 (2001)). On the other hand, "as long as there is *something* the jail or prison could do in response to a grievance . . . a grievance must be filed or the prisoner loses his right to sue." *White*, 800 F.3d at 395 (emphasis in original).

Plaintiff points out that he was in a wheelchair, he had to go up and down stairs in order to get to the dining hall, and he had to shower in a non-accessible shower (*Id.* at pp. 3, 4). He claims that these circumstances placed him in imminent danger, which became actual harm on July 7th when he fell in the shower (*Id.* at p. 4). And once he suffered this harm, "there was nothing left to request or grieve through the administrative remedy process" because the process could no longer protect him from an injury that had already occurred (*Id.* at pp. 4–5).

The Court is unpersuaded by Plaintiff's objection. To the extent that his housing posed an imminent danger of serious physical harm, Plaintiff certainly could have grieved the issue before he was injured. Plaintiff became aware of the potential for injury and the need for the prison to take action as soon as he was issued a wheelchair. In fact, he claims that he asked Ms. Bell the same day he was issued a wheelchair to transfer him to a unit that was safe and accessible (Doc. 38, p. 3). Plaintiff had the wheelchair for *thirteen* days before he was injured. That timeframe provided Plaintiff with ample opportunity to begin the grievance process, and a grievance might have elicited a response, such as a cell reassignment or the procurement of safety equipment

for the shower, which would have avoided Plaintiff's injury.

Plaintiff also could have grieved the issue of his housing after he was injured because it appears that Plaintiff still had something to gain by filing a grievance. It is unclear if, or where, Plaintiff was moved following his injury or whether he received safety equipment for the shower; therefore, he may have faced the potential for further harm. Even if the potential for harm was completely eliminated following Plaintiff's injury, a grievance still could have provided other relief, such as disciplinary measures against Ms. Bell for failing to remove him from harm's way or other measures that would have discouraged her from ignoring Plaintiff's requests in the future. *See White*, 800 F.3d at 395 (discussing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). Because there was *something* the prison could do regarding a grievance about Plaintiff's housing both before and after his injury, he was not excused from exhausting his administrative remedies on this issue.

Finally, the fact that Plaintiff fractured his arm on July 7th simply has no bearing on the availability of remedies for events that occurred following his injury. Despite his injury, the prison quite obviously could have taken action to remedy the delayed and inadequate medical care he claims he received as well as his purportedly retaliatory transfer. Thus he was not excused from exhausting his administrative remedies. For these reasons, Plaintiff's first objection is overruled.

## B.  Recruitment of Counsel

Plaintiff also objects to Magistrate Judge Wilkerson's decision not to recruit counsel for him (Doc. 50, p. 6). This objection does not directly challenge any of the

findings of fact, conclusions of law, or recommendations set forth in the Report and Recommendation. Consequently, it does not constitute a specific objection as contemplated by Rule 72(b) or Local Rule 73.1(b) and does not trigger a *de novo* review or justify rejecting any portion of the Report and Recommendation. To the extent Plaintiff is asking the Court to revisit Magistrate Judge Wilkerson's denial of his request for counsel (*see* Doc. 19), his request is denied for two reasons. First, it is untimely; under the Local Rules, Plaintiff had fourteen days to appeal that order to the district judge, but he waited months to do so. 28 U.S.C. § 636(b)(1)(A); SDIL-LR 73.1(a). Second, Plaintiff has not shown that that Magistrate Judge Wilkerson's ruling was clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); SDIL-LR 73.1(a). Magistrate Judge Wilkerson denied Plaintiff's motion for counsel because Plaintiff did not make the threshold showing that he attempted to obtain counsel on his own or that he was effectively precluded from doing so (Doc. 19). That decision reflects a proper application of the law. *See Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008) ("[A] request for appointment of counsel will be considered by the court only after the plaintiff has made reasonable efforts to obtain counsel from the private bar."); *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) ("[H]as the indigent plaintiff made a reasonable attempt to obtain counsel . . . is a threshold question the district court must ask . . . ."); *Gil v. Reed*, 381 F.3d 649, 658 (7th Cir. 2004) ("[T]he threshold consideration in determining whether to appoint counsel is whether the inmate has attempted and failed to procure counsel on his own . . . ."). Thus, Plaintiff's second objection is overruled.

<u>CONCLUSION</u>

For these reasons, Plaintiff's objections to the Report and Recommendation (Doc. 50) are **OVERRULED**. Magistrate Judge Wilkerson's Report and Recommendation (Doc. 48) is **ADOPTED** in its entirety. The motion for summary judgment on the issue of exhaustion filed by Defendants Zelda Bell and the United States of America (Doc. 32) is **GRANTED**, and this action is **DISMISSED without prejudice** for failure to exhaust administrative remedies. The Clerk of Court shall enter judgment accordingly.

<u>NOTICE</u>

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(B). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also

comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent

statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

      **IT IS SO ORDERED.**

      **DATED:  April 14, 2016**

                                      _____
                                        **NANCY J. ROSENSTENGEL**
                                        **United States District Judge**